32 A.3d 1231

COMMONWEALTH of Pennsylvania, Appellant

v.

Michelle Necole GRIFFITH, Appellee.

Supreme Court of Pennsylvania.

Argued May 10, 2011.

Decided Nov. 2, 2011.

John T. Adams, Reading, Alisa Rebecca Hobart, Berks County District Attorney's Office, for Commonwealth of Pennsylvania.

Hugh J. Burns, Jr., Philadelphia, Peter Carr, Ronald Eisenberg, Philadelphia, Philadelphia District Attorney's Office, Joseph E. McGettigan III, Office of the District Attorney of Philadelphia County, Rufus Seth Williams, Stradley, Ronon, Stevens & Young, L.L.P., for Appellant Amicus Curiae, Pennsylvania District Attorneys Association.

Jill M. Scheidt, Rabenold Koestel Scheidt, Reading, for Michelle Necole Griffith.

Karl Baker, Ellen T. Greenlee, Peter Rosalsky, Defender Association of Philadelphia, for Appellee Amicus Curiae, Defender Association of Philadelphia.

John B. Mancke, Mancke, Wagner, Spreha & McQuillan, Harrisburg, for Appellee Amicus Curiae, PA Association of Criminal Defense Lawyers.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice McCAFFERY.

The issue presented in this case is whether expert testimony is required to convict a defendant of driving under the influence of a drug or combination of drugs, 75 Pa.C.S. § 3802(d)(2), when the drugs in question are prescription medications. Because the Superior Court erroneously concluded that expert testimony was required under this statutory provision, we reverse.

On May 31, 2006, Michelle Necole Griffith ("Appellee") was charged by criminal complaint with driving under the influence of a drug to a degree which impairs the ability to drive safely, pursuant to 75 Pa.C.S. § 3802(d)(2), following an incident that took place on May 5, 2006.[1] The criminal complaint was based on an eyewitness's account of the reckless and dangerous manner in which Appellee was driving;[2] on a police

1. Appellee was also charged with and found guilty of several other offenses arising from the same incident, to wit, Reckless Driving, 75 Pa.C.S. § 3736(a); Careless Driving, 75 Pa.C.S. § 3714(a); Driving on Roadways Laned for Traffic, 75 Pa.C.S. § 3309(1); and Driving while Operating Privilege is Suspended or Revoked, 75 Pa.C.S. § 1543(b)(1).

2. Specifically, the eyewitness observed Appellee drive across yellow lines into the left lane of the roadway three different times, each time resulting in evasive action by the oncoming vehicles to avoid a head-on collision. In turning back into the right lane, Appellee swerved too far to the right and crossed the white line onto the road shoulder. Recognizing a problem, the eyewitness followed Appellee's vehicle and called 911. Notes of Testimony, 3/7/07, at 7–11. The eyewitness also testified that, at the time she was observing Appellee's vehicle, it was daylight and the weather was cloudy but not raining. *Id.* at 12.

officer's observations of Appellee, including her failure to pass three field sobriety tests; and on the detection in Appellee's blood of Diazepam (Valium), at 95 nanograms per milliliter, and Nordiazepam, at 220 nanograms per milliliter, along with Appellee's acknowledgement that she had taken a different prescription medication, specifically, Soma 350, on the morning of the incident.[3] Police also found prescription pill bottles for Soma in the open center console of Appellee's vehicle.[4]

A bench trial was held on March 7, 2007, at which only two individuals testified: the eyewitness who observed Appellee's reckless driving and then called 911, and Officer William H. Dillman, the experienced police officer who responded to the call. In addition, the parties stipulated that both Diazepam and Nordiazepam are Schedule IV controlled substances, and that the amounts found in Appellee's bloodstream were, respectively, just below or in the therapeutic range. The trial court convicted Appellee of violating subsection 3802(d)(2), and on June 25, 2008, sentenced her to serve not less than 90 days nor more than 5 years in prison, and to pay a fine of $1,500 as well as costs.[5]

Appellee appealed to the Superior Court, asserting, *inter alia*, that the evidence was not sufficient to prove that she had violated subsection 3802(d)(2), because no expert testimony had been proffered to establish that the prescription medications detected in her blood were the cause of her impaired ability to drive safely. A divided panel of the Superior Court reversed Appellee's conviction. Although no member of the

3. As Appellee acknowledges, Valium is a brand name for Diazepam, and Nordiazepam is an active metabolite of Diazepam. *See* Appellee's Brief at 1. Soma is also known as Carisoprodol; it was not detected in Appellee's blood. Trial Court Opinion, dated 8/29/08, at 3–4.

4. Appellee filed a pre-trial motion to suppress the prescription pill bottles and the blood test results, which motion the trial court denied on December 20, 2006. Appellee included a challenge to the denial of her suppression motion in her appeal to the Superior Court, but the Superior Court did not reach the suppression matter because it reversed her conviction on other grounds, as discussed in the text, *infra*.

5. Appellee was given a mandatory minimum sentence, applicable because this was her second offense for driving under the influence ("DUI") within ten years. *See* 75 Pa.C.S. § 3804(c)(2).

panel disputed the trial court's finding that Appellee was incapable of safely driving on the afternoon of the incident that led to her arrest, the majority held that the evidence was insufficient to sustain Appellee's conviction. *Commonwealth v. Griffith*, 985 A.2d 230, 235–36 (Pa.Super.2009). Under the majority's reasoning, the laboratory tests revealed only the *presence* of prescription medications in Appellee's blood, and it was improper for the fact-finder to infer the *effect* of those prescription medications on the human body in the absence of expert testimony. *Id.* at 236. The majority contrasted the generally understood intoxicating effect of alcohol with the various effects of prescription medications: the effect of alcohol "is widely known and recognized by the average layperson, [but] the same cannot be said [concerning the effects] of prescription medications." *Id.* Accordingly, the panel majority set forth a rule requiring expert testimony as to the effects and interactions of prescription medications when such medications are the alleged intoxicants in a subsection 3802(d)(2) prosecution. *Id.*

Writing in dissent, Judge Maureen Lally–Green disagreed with the majority's pronouncement of a rule requiring expert testimony in subsection 3802(d)(2) prosecutions that involve prescription medications. In addition, Judge Lally–Green would have concluded that the evidence was sufficient to convict Appellee under subsection 3802(d)(2) given the circumstances of this case.

The Commonwealth filed a petition for allowance of appeal to this Court, which we granted as to the following issue:

Whether expert testimony is required to prove that the amount of a controlled substance found in a defendant's blood or urine caused the driving impairment under 75 Pa.C.S. § 3802(d)[ (2) ].

*Commonwealth v. Griffith*, 607 Pa. 100, 4 A.3d 608 (2010).

■ This issue sets forth a legal question, to wit, whether the evidence to establish a violation of subsection 3802(d)(2) can ever be sufficient in the absence of expert testimony as to causation. To resolve this question, we must interpret the

relevant statutory provisions to ascertain the legislative intent. Because we are addressing a question of law, our standard of review is *de novo* and our scope is plenary. *Commonwealth v. Hacker*, 15 A.3d 333, 335 (Pa.2011); *Commonwealth v. Dowling*, 598 Pa. 611, 959 A.2d 910, 913 (2008).

The object of all statutory interpretation is to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a); *McGrory v. Commonwealth of Pennsylvania, Department of Transportation*, 591 Pa. 56, 915 A.2d 1155, 1158 (2007). In general, the best indication of legislative intent is the plain text of the statute. *McGrory, supra*. However, when the words of the statute are not explicit, the General Assembly's intent may be ascertained by considering other factors, including the occasion and necessity for the statute; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; a former version of the law or other statutes on a similar subject; and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c); *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 189 (2005). In ascertaining the General Assembly's intent, we presume that the legislators have not intended an absurd or unreasonable result, and that they intend to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(1) and (5).

The statute at issue is the following:

(d) Controlled substances.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in . . . The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(1)-(3) (emphasis added to subsection at issue here).

The Superior Court has interpreted subsection 3802(d) on several occasions. In *Commonwealth v. Williamson*, 962 A.2d 1200, 1204 (Pa.Super.2008), the Superior Court discussed the elements of a subsection 3802(d)(2) offense, emphasizing that to convict the defendant of this offense, "the Commonwealth only had to prove that[, while driving or operating a vehicle,] she was under the influence of a drug to a degree that impair[ed . . .] her ability to safely drive[ ] or operate a vehicle." *Id.* at 1204 (internal quotation marks omitted). After the defendant in *Williamson* was observed driving erratically, a police officer found her slumped over the steering wheel of her vehicle. Her movements were lethargic, her speech was slowed and incoherent, and she failed two field sobriety tests. In addition, she admitted to having taken two medications, Klonopin and Methadone, and a laboratory test revealed the presence in her urine of benzodiazepines, a class of drugs including Klonopin, Xanax, and Valium. *Id.* at 1201–02. Based on the above findings, she was charged with a violation of subsection 3802(d)(2). She filed a pre-trial motion to suppress the report of the urine test results on the grounds that it did not set forth the specific concentration of benzodiazepines detected. The trial court granted the suppression motion, and the Commonwealth appealed.

The Superior Court reversed the trial court's suppression order in *Williamson*, recognizing that subsection 3802(d)(2), by its plain text, does not require that any specific quantity of a drug be present in a defendant's blood or urine. *Williamson, supra* at 1204. The Superior Court summarized the

evidence supporting the Commonwealth's case-in-chief in *Williamson* as follows: the laboratory test results, revealing the presence of benzodiazepine in the defendant-appellee's urine; her admission to having taken two types of drugs just hours before driving; eyewitness testimony concerning her erratic driving; and the state trooper's testimony as to her demeanor and her failure to pass two field sobriety tests. *Id.* The *Williamson* court did not directly or conclusively address whether this evidence was sufficient for conviction, but simply reversed the trial court's suppression order and remanded for trial.

The Superior Court did consider the matter of evidentiary sufficiency under subsection 3802(d)(2) in *Commonwealth v. DiPanfilo*, 993 A.2d 1262 (Pa.Super.2010), (petition for allowance of appeal pending at No. 326 MAL 2010).[6] The appellant in *DiPanfilo* crashed his truck at slow speed into a road sign and then walked away from the scene, leaving the truck with two wheels on the six-inch curb. When the officer investigating this one-vehicle accident located the appellant, he fled and fell down a flight of stairs. *Id.* at 1263. He complained of foot pain and was taken to the hospital. Based on the appellant's lethargy, slow movement, slurred speech, and gray-appearing skin, the officer believed that he was under the influence of a controlled substance and requested that he undergo chemical testing. The appellant refused to have blood drawn for chemical testing, but a routine hospital urine screen revealed the presence of cocaine metabolites and opiates. *Id.* Following a jury trial, he was convicted of violating subsection 3802(d)(2). He appealed his conviction to the Superior Court, contending that the evidence was legally insufficient to support his conviction.

Before the Superior Court, the appellant in *DiPanfilo* argued that the Commonwealth did not establish that the cocaine metabolites and opiates in his urine were the cause of any impairment that he exhibited. He further argued that

6. On December 23, 2010, this Court ordered that DiPanfilo's petition for allowance of appeal be held pending the disposition of the instant appeal.

expert testimony was required under subsection 3802(d)(2) because the effect of controlled substances on an individual is not within the experience of lay persons. *Id.* at 1263–64. The Superior Court affirmed the appellant's conviction based on the totality of the Commonwealth's direct and circumstantial evidence, as summarized *supra*. *Id.* at 1268. The court recognized that, while subsection 3802(d)(1) prohibits driving when there is *any* quantity of illegal drug in one's blood, subsections 3801(d)(2) and (d)(3) do not require that a drug be chemically detectable in the defendant's body or that blood tests be performed. *Id.* at 1268 n. 6. Rather, the text of subsections 3801(d)(2) and (d)(3) requires only that one's ability to safely drive be impaired because of the influence of a drug. The Superior Court further concluded that expert testimony was not required to establish that the *DiPanfilo* appellant's impairment was due to his use of cocaine and/or opiates, because the intoxicating effects of cocaine and opiates, like the intoxicating effects of alcohol, are widely known and commonly understood. *Id.* at 1267.

The Superior Court reached a somewhat different result in *Commonwealth v. Etchison*, 916 A.2d 1169 (Pa.Super.2007), *affirmed per curiam*, 596 Pa. 351, 943 A.2d 262 (2008), a case dealing with another illegal drug, marijuana. In *Etchison*, a state trooper observed the appellant driving in the wrong direction on the exit ramp of a limited access highway. Approaching the appellant and smelling alcohol, the trooper administered field sobriety tests, which the appellant failed. The appellant agreed to have blood drawn for testing, which revealed the presence of cannabinoid (marijuana) metabolites as well as alcohol, at, respectively, 53 nanograms per milliliter and 0.05%. Following a bench trial, the appellant was convicted of violating subsection 3802(d)(1), (d)(2), and (d)(3).

Before the Superior Court, the *Etchison* appellant challenged the sufficiency of the evidence to support his convictions under subsections 3802(d)(2) and (d)(3). The Superior Court concluded that the Commonwealth had presented *no* evidence that the appellant's ability to drive safely was impaired by the cannabinoid metabolites and/or alcohol in his

blood. *Etchison, supra* at 1172. The court cited the opinion of the Commonwealth's expert witness, a toxicologist, who testified on cross-examination that the presence in blood of cannabinoid metabolites does not indicate impairment at the time the blood was drawn, but only indicates the prior ingestion of marijuana. *Id.; see also id.* at 1175–76 (Concurring and Dissenting Opinion, Bender, J.) (citing the toxicologist-expert's testimony that the level of marijuana metabolites detected in the appellant's blood was very small and could reflect marijuana usage weeks ·or months before, because these metabolites are stored in fatty tissue). Thus, the Commonwealth's expert did not opine that the appellant had been under the influence of marijuana when he was driving, much less that the appellant had been under the influence to a degree that impaired his ability to drive safely. The Superior Court subsequently explained further that its decision in *Etchison* rested, in "large part," upon the fact that marijuana is a fat-soluble drug, the metabolites of which can be detected in the blood for a long time after ingestion. *Williamson, supra* at 1205; *see also Commonwealth v. DiPanfilo,* 993 A.2d 1262, 1267 (Pa.Super.2010) (explaining that the *Etchison* holding "arose from the fact that the Commonwealth only proved the presence of cannabinoid metabolites in the defendant's bloodstream and marijuana is a fat-soluble drug that can remain in the blood for months").

██ We turn now to the case and the question before us. After analyzing the relevant statute in its entirety and in its proper context and considering the Superior Court's analyses discussed above, we decline to read into subsection 3802(d)(2) a mandatory requirement for expert testimony to establish that the defendant's inability to drive safely was caused by ingestion of a drug, even if it is a prescription drug, or drug combination. We do not dispute that in some cases, depending on the specific facts and circumstances, expert testimony may be helpful, or perhaps even necessary, to prove causation under subsection 3802(d)(2), but we decline to hold that the need for expert testimony is inherent in the statutory provision and thus mandatory in all cases.

■ Our decision derives, in large part, from a comparison of those provisions of Section 3802 that concern alcohol consumption versus those that concern drug usage. Most of the alcohol-related provisions, *i.e.*, subsections 3802(a)(2), (b), and (c), prohibit driving after an individual has imbibed sufficient alcohol such that the alcohol concentration in that individual's blood or breath reaches certain, specific levels within two hours after driving. To prove the specific level of alcohol in the defendant's blood or breath at the relevant time, a blood or breath test is obviously required. In contrast, under the general impairment provision set forth in subsection 3802(a)(1), a blood or breath test to determine alcohol level is not required; rather, a different standard is used, to wit, "imbibing a sufficient amount of alcohol such that [one] is rendered incapable of safely driving." We have made clear that Section 3802 neither specifies nor limits the type of evidence that the Commonwealth may proffer to prove its case under subsection 3802(a)(1). *Commonwealth v. Segida*, 604 Pa. 103, 985 A.2d 871, 879 (2009) (citing *Commonwealth v. Kerry*, 906 A.2d 1237, 1241 (Pa.Super.2006)). Although the Commonwealth *may* proffer evidence of alcohol level and/or expert testimony to establish that the defendant had imbibed sufficient alcohol to be rendered incapable of driving safely, it is not required to do so under subsection 3802(a)(1). *Id.* This is well-established, long-standing law in Pennsylvania. *See, e.g., Commonwealth v. Horn*, 395 Pa. 585, 150 A.2d 872, 875 (1959) (under a prior version of the statute, making clear that medical opinion is admissible but not required to prove that a defendant operated a motor vehicle while under the influence of intoxicating liquor). As we stated in *Segida, supra* at 879, "[r]egardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level." Thus, as an important practical consequence of this statutory scheme, a drunk driver who declines to submit to a blood or breath test to determine alcohol level can still be charged with and convicted under subsection 3802(a)(1) if the Commonwealth can prove that he or she drove after imbibing

a sufficient amount of alcohol such that he or she was rendered incapable of safely driving.

The General Assembly chose to construct a similar statutory framework with regard to prohibitions against driving after drug usage. First, subsection 3802(d)(1) prohibits one from driving if there is **any** amount of a Schedule I controlled substance, **any** amount of a Schedule II or Schedule III controlled substance that has not been medically prescribed for the individual, or **any** amount of a metabolite of a controlled substance in one's blood. Analogously to subsections 3802(a)(2), (b), and (c) for alcohol intoxication, subsection 3802(d)(1) requires a measurement to determine if any amount of a Schedule I, II, or III controlled substance is detectable in the defendant's blood. Second, and analogously to subsection 3802(a)(1) for alcohol intoxication, subsection 3802(d)(2) prohibits driving if one is "under the influence of a drug or combination of drugs to a degree which impairs [one's] ability to safely drive." This provision by its plain text does not require that a drug be measured in the defendant's blood, nor does it specify any particular manner by which the Commonwealth is required to prove that the defendant was under the influence of a drug. Like subsection 3802(a)(1), *see Segida, supra* at 879, subsection 3802(d)(2) does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case. Given the general nature of subsection 3802(d)(2)'s prohibition, the textual similarity of subsection 3802(d)(2) to subsection 3802(a)(1), and Section 3802's overall structure, we decline to impose a requirement for expert testimony in all prosecutions under subsection 3802(d)(2).

We recognize that the Superior Court appeared to limit its requirement for expert testimony in subsection 3802(d)(2) cases to those involving *prescription* medications as the alleged intoxicants. *See Griffith, supra* at 236. This limitation was based on the Superior Court's determination that the average layperson does not know or recognize the effects of prescription medications. *Id.* We do not believe that the Superior Court's division of drugs into prescription versus

non-prescription categories is warranted or helpful in the interpretation or application of subsection 3802(d)(2) or in the determination of whether an expert witness should be called. Pursuant to our general standard, a need for expert testimony arises when "the jury is confronted with factual issues whose resolution requires knowledge beyond the ken of the ordinary layman." *Kozak v. Struth,* 515 Pa. 554, 531 A.2d 420, 422 (1987). The need for expert testimony in a subsection 3802(d)(2) prosecution must be evaluated on a case-by-case basis, taking into account not just the specific drug at issue, prescription or otherwise, but also the nature and overall strength of the Commonwealth's evidence, viewed pursuant to the general standard expressed in *Kozak, supra.*

After reviewing all the evidence admitted in the instant case, we conclude that it is sufficient to sustain Appellee's conviction under subsection 3802(d)(2).[7] As discussed above, the trial court determined, and the Superior Court did not dispute, that Appellee drove her vehicle when she was incapable of safely driving; this element is not before us. The only question here is whether the evidence was sufficient to establish that Appellee's inability to drive safely was the result of the influence of a drug or combination of drugs.

Officer Dillman, a police officer with twelve years of experience, testified for the Commonwealth. He testified that when he approached Appellee's parked car, she was outside the car, standing on the driver's side. He "immediately recognized that [Appellee] was having difficulty standing, off balance[, and she] was constantly having to catch herself on [her] vehicle...." Notes of Testimony, 3/7/07, at 22–23; *see also id.* at 25 ("[Appellee] was having difficulty standing, swaying, off balance. Just having a very hard time standing."). Officer

7. Our standard of review in a challenge to the sufficiency of the evidence requires that we consider the evidence admitted at trial in a light most favorable to the Commonwealth as the verdict-winner, and grant the Commonwealth all reasonable inferences that can be derived from the admitted evidence. We will deem the evidence legally sufficient only if it proves, beyond a reasonable doubt, each element of the offense charged. *Commonwealth v. Briggs,* 608 Pa. 430, 12 A.3d 291, 306 (2011).

Dillman "also noticed that as [Appellee] was trying to light a cigarette her hands were shaking." *Id.* at 23. He advised her to sit on the curb so that she wouldn't fall and injure herself. *Id.* at 25. Officer Dillman testified that he had received training as to driving under the influence cases, including with regard to persons under the influence of controlled substances. *Id.* at 26. He explained that he asked Appellee to submit to three field sobriety tests, which she agreed to do but was unable to perform. *Id.* at 26–29. After arresting Appellee, the officer brought her to the hospital to have blood drawn for tests to detect alcohol and other controlled substances. *Id.* at 29–30. The parties stipulated to the results of the blood tests, which revealed the presence of two Schedule IV drugs, Diazepam (Valium), at 95 nanograms per milliliter, and Nordiazepam, at 220 nanograms per milliliter; these concentrations were, respectively, just below and in the therapeutic concentration range. Furthermore, Appellee told Officer Dillman that she had taken a different drug, a Soma 350, in the morning of the day of the incident. *Id.* at 25–26.

We hold that the above-summarized evidence was sufficient to establish that Appellee was under the influence of a drug or combination of drugs to a degree that impaired her ability to safely drive. An experienced police officer closely observed Appellee's behavior, demeanor, unsteadiness, and inability to perform field sobriety tests, all of which led him to request laboratory tests for the detection of controlled substances in Appellee's blood. Appellee admitted taking one prescription medication in the morning of the day of her arrest. Two other Schedule IV controlled substances, to wit, Valium and an active metabolite thereof, were detected in her blood. The Commonwealth's evidence was sufficient to establish, beyond a reasonable doubt, that Appellee violated subsection 3802(d)(2).

Order reversed. Case remanded to the Superior Court for consideration of Appellee's remaining issues on appeal. Jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, BAER, TODD and ORIE MELVIN join the opinion.