J-A15012-14

2014 PA Super 202

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| TARIQUE WILSON | |
| Appellee | No. 1321 EDA 2013 |

Appeal from the Order April 3, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0008085-2012

BEFORE: PANELLA, J., LAZARUS, J., and JENKINS, J.

OPINION BY PANELLA, J.                    **FILED SEPTEMBER 18, 2014**

The Commonwealth of Pennsylvania appeals the Court of Common Pleas of Philadelphia County order, which denied the Commonwealth's petition for a writ of *certiorari*, from the order entered in Municipal Court granting Appellee, Tarique Wilson's Motion to Suppress Evidence. The Commonwealth contends that the lower courts erred in determining that 75 Pa.C.S.A. § 3802(d), pertaining to driving under the influence of a controlled substance, requires blood testing within two hours of driving. After review, we reverse the order denying the Commonwealth's petition for writ of *certiorari* and remand for further proceedings.

On February 25, 2012, at 11:55 p.m., Philadelphia Police Officer Gregory Dixon stopped Wilson's vehicle at the 1900 block of 54th Street in the city of Philadelphia. **See** N.T., Municipal Court Hearing, 1/31/13 at 12.

Officer Dixon arrested Wilson under suspicion of driving while intoxicated (DUI) at 11:59 p.m. and transported him to the Philadelphia Detention Unit (PDU). *See id*. at 13-14. At the PDU, Officer Henry Sienkiewicz was assigned to process the blood testing of DUIs and was working alone the evening Wilson was brought in for blood testing. *See id*. at 18-19. Eventually, another officer was freed to assist with the volume of DUIs to process. *See id*. at 18. That evening, the officers processed between 25 to 30 DUIs, with an average Breathalyzer processing lasting approximately 28 minutes and blood testing requiring approximately 13 minutes. *See id*. at 20-22. Wilson was presented to Officer Sienkiewicz for blood processing at 2:25 a.m. and his blood sample was tested at 2:36 a.m. *See id*. at 21.

The police eventually charged Wilson with driving under the influence of a controlled substance.[1] At a municipal court hearing on January 31, 2013, Wilson moved to suppress physical evidence, stating that over two hours had passed between the time he had driven to the time his blood was drawn, in violation of the two-hour rule of 75 Pa.C.S.A. § 3802. Wilson additionally argued that the Commonwealth failed to establish a "good cause" exception to the two-hour rule under subsection 3802(g). Following the hearing, the municipal court granted Wilson's suppression motion on the grounds that section 3802 was ambiguous as to whether the two-hour rule

_____

[1] 75 Pa.C.S. § 3802(d).

applied to offenders accused of driving under the influence of controlled substances, and that the ambiguity therefore should be construed in favor of the defendant. *See* N.T., Municipal Court Hearing, 1/31/13 at 30-31.

On February 20, 2013, the Commonwealth filed a petition for writ of *certiorari* to the court of common pleas. Following a brief hearing on April 3, 2013, the trial court denied the Commonwealth's petition. This timely appeal followed.[2]

The Commonwealth raises the following issue for our review:

> Where the police arrested defendant for driving under the influence of marijuana at 11:59 p.m., but could not obtain his blood sample for testing until 2:36 a.m. because of the large number of suspects waiting to be tested, did the Court of Common Pleas err in affirming the Municipal Court order suppressing the Commonwealth's evidence because the blood sample was obtained more than two hours after arrest?

Appellant's Brief at 4.

Our standard of review is as follows.

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. [Where the defendant] prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence

---

[2] This appeal properly invokes the jurisdiction of this Court as an interlocutory appeal from an order that terminates or substantially handicaps the prosecution. The Commonwealth has certified in good faith that the order substantially handicaps the instant prosecution. *See* Pa.R.A.P. 311(d).

for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Lark*, 91 A.3d 165, 168 (Pa. Super. 2014) (citation omitted).

Instantly, the Commonwealth argues that the trial court erred in affirming the municipal court's suppression of evidence because subsection 3802(d), pertaining to driving under the influence of a controlled substance, does not require testing for controlled substances to occur within two hours of driving. Our examination of this issue is one of statutory interpretation, which is a matter of law. Thus, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Spence*, 91 A.3d 44, 46 (Pa. 2014).

When construing a [statutory provision] utilized by the General Assembly in a statute, our primary goal is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "Every statute shall be construed, if possible, to give effect to all its provisions." *Id*. However, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id*. § 1921(b). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." *Id*. § 1903(a). In other words, if a term is clear and unambiguous, we are prohibited from assigning a meaning to that term that differs from its common everyday usage for the purpose of effectuating the legislature's intent. Additionally, we must remain mindful that the "General

- 4 -

Assembly does not intend a result that is absurd, impossible of execution or unreasonable." *Id*. § 1922(1).

*Commonwealth v. Cahill*, 95 A.3d 298, 301 (Pa. Super. 2014).

Subsection 3802(d) provides:

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64) known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

(4) The individual is under the influence of a solvent or noxious substance in violation of 18 Pa.C.S. § 7303 (relating to sale or illegal use of certain solvents and noxious substances).

75 Pa.C.S.A. § 3802(d) (footnote omitted). The plain language of subsection (d) clearly does not specify a time limit within which blood must be tested for the presence of a controlled substance. In contrast, subsections dealing with blood or breath testing for alcohol consumption

(with the exception of subsection (a)(1)) explicitly require the offender's blood alcohol content reach a specified level within two hours of driving:

(a) General impairment.--

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% *within two hours* after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

(b) High rate of alcohol.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% *within two hours* after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

(c) Highest rate of alcohol.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher *within two hours* after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)-(c) (emphasis added). Subsections (e) and (f), prohibiting minors and drivers of commercial vehicles and school buses from driving after imbibing alcohol, similarly contain a two-hour requirement for blood and breath testing. **See** 75 Pa.C.S.A. § 3802(e)-(f).

The Commonwealth contends that in light of the two-hour limiting language contained in subsections (a)(2), (b), (c), (e), and (f), the conspicuous absence of such language in subsection (d) pertaining to controlled substances must have been deliberate. Relying upon the maxim of statutory interpretation "*expression unius est exclusion alterius*" (the expression of one thing is the exclusion of another) the Commonwealth argues that "legislative silence is not an indication that the omitted language was adopted, but that it was *rejected*." Commonwealth's Brief at 14 and n.3 (emphasis in original).

Apart from the plain language of the statute, the Commonwealth's argument that subsection 3802(d) does not contain a two-hour time limitation is further based upon the Pennsylvania Supreme Court's decisions in ***Commonwealth v. Segida***, 985 A.2d 971 (Pa. 2009), and ***Commonwealth v. Griffith***, 32 A.3d 1231 (Pa. 2011). In ***Segida***, the Supreme Court held that section 3802(a)(1), which proscribes driving after the imbibing of sufficient alcohol such that the individual is rendered incapable of safely driving, was an "at the time of driving" offense—one in which the actual time of driving is not included in the elements of the offense. ***See*** 985 A.2d at 878. The Court reasoned that because subsection 3802(a)(1) did not contain a requirement that the offender's blood alcohol content reach a specified level within two hours of driving, unlike in subsections 3802(a)(2), (b) and (c), "the only relevant time period is that span of time during which an individual is incapable of safely driving due to

alcohol intoxication." ***Id***. Writing for the majority, Justice Seamus McCaffery reasoned that,

> [s]ubsections 3802(a)(2), (b), and (c) explicitly specify a time limit of "within two hours" after driving for determination of blood alcohol level—while subsection 3802(a)(1) does not specify any time frame—because of eminently practical considerations. The necessity for the two hour time limit in subsections 3802(a)(2), (b), and (c) is grounded in the practical impossibility either of measuring blood alcohol level precisely at the time of driving or of calculating the exact blood alcohol level at the time of driving from a single blood alcohol measurement taken at some point in time after driving. ***See*** [***Commonwealth v. Duda***, 923 A.2d 1138, 1141 (Pa. 2007)]. These practical considerations do not have the same force with regard to subsection 3801(a)(1), which does not limit the type of evidence that the Commonwealth can proffer to prove its case. ***See*** [***Commonwealth v. Kerry***, 906 A.2d 1237, 1241 (Pa. Super. 2006)] ("Section 3802(a)(1), like its predecessor [statute], is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.") (citation and internal quotation marks omitted).

***Id***., at 879. The Court continued, "[r]egardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level." ***Id***.

In ***Griffith***, the Court was confronted with determining whether expert testimony was required to determine whether a defendant driving under the influence of a controlled substance or a combination thereof under subsection 3802(d)(2), when those drugs in question were prescription medication. ***See*** 32 A.3d at 1233. In holding that the need for expert

- 8 -

testimony is not mandated by the plain language of subsection 3802(d)(2), Justice McCaffery, again writing for the majority, compared the provisions of the statute concerning alcohol consumption with those that concern drug use. *See id*., at 1238. Determining that the "General Assembly chose to construct a similar statutory framework with regard to prohibitions against driving after drug usage[,]" the Court analogized subsection 3802(d)(1), which "requires a measurement to determine if any amount of a Schedule I, II, or III controlled substance is detectable in the defendant's blood[,]" with subsections 3802(a)(2), (b), (c) for alcohol intoxication. *Id*., at 1239. The Court then found subsection 3802(d)(1), which prohibits driving if one is "under the influence of a drug or combination of drugs to a degree which impairs [one's] ability to safely drive" but does not require the drug be measured in the offender's blood, analogous to subsection 3802(a)(1). *Id*.

In denying the Commonwealth's petition for writ for *certiorari*, the trial court relied upon the analogy in *Griffith* between subsection 3802(d)(1) and subsections (a)(2), (b), and (c). Extending the analogy, the trial court reasoned that "[t]hough § 3802(d)(1) does not explicitly say that a blood test must be taken within two hours, … it is reasonable to assume that the legislature intended to impose the two-hour requirement on blood tests for controlled substances as well." Trial Court Opinion, 7/3/13, at 6. We find this interpretation to be misguided. Although the Court in *Griffith* found subsection 3802(d)(1) analogous to subsections 3802(a)(2), (b), and (c), it did so only to the extent that these subsections require a measurement to

determine the presence of alcohol or a controlled substance in the offender's blood. In so finding the Supreme Court emphasized that the plain language of subsection 3802(d)(1) "prohibits one from driving if there is *any* amount of a Schedule I controlled substance, *any* amount of a Schedule II or Schedule III controlled substance that has not been medically prescribed for the individual, or *any* amount of a metabolite of a controlled substance in one's blood." *Griffiths*, 32 A.3d at 1239 (emphasis in original). By contrast, the plan language of subsections 3802(a)(2), (b) and (c) require the offender's blood alcohol content reach a specified level *within two hours of driving*. We find the express absence of such language in subsection 3802(d) to be conspicuous.

Much like the Supreme Court in *Segida* found the lack of any specific time frame in subsection 3802(a)(1) to be indicative that the legislature did not impose a two-hour time limit under that subsection, we find that the absence of any such time requirement in subsection 3802(d) persuasive that the legislature did not envision a time limit on testing for the presence of controlled substances after driving. Our conclusion is based not only on the statute itself, but is also guided by the Court's analogy in *Griffith*. Absent express legislative intent otherwise, we decline to impose a two-hour time limit when testing for the presence of controlled substances where it is not

contemplated by the unambiguous language of the statute.[3]  Accordingly, we are constrained to find that the suppression of the evidence based upon a violation of the two-hour rule in this case was in error.

Order denying motion for writ of *certiorari* is reversed.  Case remanded for proceedings consistent with this opinion.  Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/18/2014

---

[3] Based upon our decision, we need not determine whether the Commonwealth established a "good cause" exception to the two-hour rule under subsection 3802(g).