J-A28017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| SHAWN BRADWELL | |
| Appellee | No. 1866 EDA 2013 |

Appeal from the Order Entered on May 30, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: MC-51-CR-0049110-2011

BEFORE:  GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                 **FILED MARCH 10, 2015**

The Commonwealth challenges a May 30, 2013 order of the Philadelphia Court of Common Pleas.  In that order, the trial court ruled that test results from a draw of DUI-suspect Shawn Bradwell's blood were inadmissible because Bradwell's blood was drawn after the expiration of the two-hour time limit, **see** 75 Pa.C.S. § 3802(c), and because the police offered no good cause to explain the delay.  **See** 75 Pa.C.S. § 3802(g)(1). For the reasons that follow, we affirm.

The following facts are alleged by the Commonwealth.[1]  On November 19, 2011, at approximately 2:50 a.m., Philadelphia Police Officer Andrew

---

[1] Due to the procedural events that occurred in the trial court, which we set forth in more detail *infra*, this appeal comes before this Court without the facts having been presented and proven beyond a reasonable doubt to a fact-finder.  Thus, for purposes of this appeal, we rely upon the
*(Footnote Continued Next Page)*

Campbell observed Bradwell operating a motor vehicle in reverse through an intersection. Officer Campbell immediately stopped Bradwell's vehicle. Upon contact with Bradwell, Officer Campbell detected a strong odor of alcohol, and noticed that Bradwell's eyes appeared to be bloodshot. Bradwell also displayed signs of confusion. Officer Campbell arrested Bradwell on suspicion that Bradwell was driving under the influence of alcohol.

Bradwell was placed in Officer Campbell's vehicle and driven to the police headquarters. At 5:07 a.m., approximately two hours and seventeen minutes after Bradwell was observed driving his vehicle, the police drew Bradwell's blood. Subsequent testing revealed that Bradwell had a blood alcohol content ("BAC") of .175%.

Bradwell was charged with two violations of the Motor Vehicle Code: one count of 75 Pa.C.S. § 3802(a)(1), DUI—General Impairment, and one count of 75 Pa.C.S. § 3802(c), DUI—Highest Rate of Alcohol. On February 11, 2013, Bradwell filed a motion *in limine* with the Philadelphia Municipal Court seeking to preclude the Commonwealth from introducing the BAC results at trial for purposes of proving the subsection 3802(c) charge. On

*(Footnote Continued)* ——————————

Commonwealth's allegations, which Bradwell does not dispute. Regardless, any discrepancies in the details of Bradwell's arrest would not affect the outcome of this case, particularly because the Commonwealth candidly concedes the principal fact that the blood draw did not occur until after the two-hour time limit had expired. **See** Brief for the Commonwealth at 5-6.

that same day, The Honorable Joseph O'Neill of the Philadelphia Municipal Court held a hearing. At the hearing, the Commonwealth conceded that it could not proffer any cause, let alone good cause, for the delay in drawing Bradwell's blood. Notes of Testimony ("N.T."), 2/11/2013, at 6. At the conclusion of the hearing, Judge O'Neill deferred ruling until later that week. On February, 14, 2013, Judge O'Neill reconvened the parties and announced that Bradwell's motion in *limine* was granted, precluding the Commonwealth from introducing the BAC test results to prove Bradwell guilty of subsection 3802(c), DUI—Highest Rate of Alcohol. N.T., 2/14/2013, at 3. For all practical purposes, the court's ruling meant that the Commonwealth could only try Bradwell under subsection 3802(a)(1), DUI—General Impairment.

On March 14, 2013, the Commonwealth filed a petition for *certiorari*, appealing Judge O'Neill's ruling to the Court of Common Pleas. On May 30, 2013, the Honorable Paula Patrick of the Court of Common Pleas of Philadelphia held a hearing on the Commonwealth's petition. At the hearing, the Commonwealth again offered no reason to justify the delay in drawing Bradwell's blood. N.T., 5/30/2013, at 7. For that reason, Judge Patrick denied the Commonwealth's appeal.

On June 26, 2013, the Commonwealth filed a notice of appeal. Therein, the Commonwealth certified that Judge Patrick's order terminated or substantially handicapped its prosecution of Bradwell. *See* Notice of Appeal, 6/26/2013; Pa.R.A.P. 311(d) (stating that "the Commonwealth may take an appeal as of right from an order that does not end the entire case

where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). On the same day, the Commonwealth filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), even though the trial court had not yet ordered it to do so. On September 25, 2013, Judge Patrick issued an opinion pursuant to Pa.R.A.P. 1925(a).

The Commonwealth raises the following question for our review:

Did the Court of Common Pleas err in affirming the Municipal Court order excluding the Commonwealth's evidence because the blood sample was obtained more than two hours after arrest, where the blood test results were admissible in [Bradwell's] prosecution for driving under the influence of alcohol?

Brief for the Commonwealth at 4.

Herein, we confront a question heretofore unanswered in Pennsylvania. We must determine whether BAC test results that were taken after the two-hour time period set forth in subsection 3802(c) has expired are admissible when the Commonwealth cannot establish good cause for law enforcement's delay in obtaining the blood sample. This question implicates various legal precepts, and their interplay with one another, including statutory interpretation and the Pennsylvania Rules of Evidence. We begin with our applicable standards of review.

The Commonwealth appeals the trial court's denial of its petition for writ of *certiorari*. When a party "files a petition for a writ of *certiorari*, the Philadelphia Court of Common Pleas sits as an appellate court."

- 4 -

*Commonwealth v. Coleman*, 19 A.3d 1111, 1119 (Pa. Super. 2011) (citing *Commonwealth v. Rosario*, 615 A.2d 740, 741 (Pa. Super. 1992)). Generally, "[a] lower court's decision on the issuance of a writ of *certiorari* will not be disturbed absent an abuse of discretion. *Certiorari* provides a narrow scope of review in a summary criminal matter and allows review solely for questions of law." *Commonwealth v. Elisco*, 666 A.2d 739, 740 (Pa. Super. 1995) (citations omitted). Inasmuch as this case involves statutory interpretation, which is a matter of law, our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Wilson*, 101 A.3d 1151, 1153 (Pa. Super. 2014) (citing *Commonwealth v. Spence*, 91 A.3d 44, 46 (Pa. Super. 2014)).

We turn to the relevant statutory provisions. Bradwell was charged with DUI—Highest rate of alcohol, which provides as follows:

> **(c) Highest rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher **within two hours** after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c). Subsection 3802(g) provides an exception to the two hour time limit set forth in subsection (c):

> **(g) Exception to the two-hour rule.**—Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical

control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:

(1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours. . . .

75 Pa.C.S. § 3802(g). Lastly, 75 Pa.C.S. § 1547(c) establishes the general admissibility of BAC test results:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

**(c) Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

75 Pa.C.S. § 1547(c).

The relevant facts underlying this case are undisputed. Bradwell was arrested for DUI. The police did not perform a blood draw within two hours of the time that Bradwell was observed driving his vehicle. The Commonwealth did not attempt to establish good cause for the delay before the Municipal Court, the Court of Common Pleas, or this Court. Thus, Bradwell's blood was not drawn within the two hours required by subsection 3802(c), and the Commonwealth has not established the applicability of subsection 3802(g).

We must determine whether, under these circumstances, the applicable statutory provisions nonetheless permit the results of the BAC test

that result from the tardy blood draw to be admitted at trial. For the reasons that follow, we hold that they do not.

We turn our attention to the principles that govern our interpretation of the statutory provisions of the Motor Vehicle Code.

> When construing [provisions] utilized by the General Assembly in a statute, our primary goal is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "Every statute shall be construed, if possible, to give effect to all its provisions." *Id.* However, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). "Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage." *Id.* § 1903(a). In other words, if a term is clear and unambiguous, we are prohibited from assigning a meaning to that term that differs from its common everyday usage for the purpose of effectuating the legislature's intent. Additionally, we must remain mindful that the "General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." *Id.* § 1922(1).

*Commonwealth v. Cahill*, 95 A.3d 298, 301 (Pa. Super. 2014).

We first consider the plain language of the above-cited statutory provisions. Subsection 3802(c) makes it a crime for a person to drive or operate a motor vehicle after imbibing a sufficient amount of alcohol to produce a BAC of .16% or higher. The Commonwealth must establish that the suspected intoxicated driver had such an elevated BAC **within two hours** of driving. 75 Pa.C.S. § 3802(c). In other words, the driver's blood, breath, or urine must be obtained by law enforcement within two hours of being stopped by the police. The Commonwealth's arguments to the contrary notwithstanding, our General Assembly has unequivocally

- 7 -

instructed that this is an essential element of proving a person guilty of subsection 3802(c).  In fact, the language of subsection (g) twice refers to the two-hour time limit as an element of the offense.  *See* 75 Pa.C.S. § 3802(g); *Wilson*, 101 A.3d at 1154 (noting that § 3802's subsections dealing with the consumption of alcohol specify a time limit within which blood must be drawn for the presence of alcohol).  Thus, the plain language of the statute demonstrates patently the General Assembly's intent: obtaining a DUI-suspect's blood, breath, or urine within two hours of driving is an essential element of subsection 3802(c).  No other construction is tenable, as any other construction would conflict directly with the clear language utilized by our General Assembly when it enacted § 3802(c).

This conclusion is particularly inescapable by virtue of the fact that the lawmakers codified a "safety valve" for the Commonwealth.  Where, as here, the Commonwealth cannot establish that a suspect's chemical sample was obtained within two hours, the Commonwealth nonetheless still may utilize tests resulting from a tardy blood draw if it satisfies the relevant exception set forth in subsection 3802(g).  Subsection (g) states that evidence of test results from samples drawn after the two-hour limit will be admissible and sufficient to establish the relevant element when Commonwealth can show good cause for the delay.  75 Pa.C.S. § 3802(g).  This good cause safety valve has not been invoked (much less established) by the Commonwealth here.

The plain language of these two provisions establishes a two-tier approach pursuant to which the Commonwealth may prove beyond a reasonable doubt that a driver had a BAC of .16% or higher. The Commonwealth can prove the BAC either: (1) with test results derived from a sample drawn within two hours of the suspect driving the vehicle; or (2) with a sample drawn after the passage of two hours, provided there exists good cause for the delay.

Instantly, the Commonwealth satisfied neither of these two approaches. The Commonwealth nonetheless argues that the evidence should be admitted at trial because its failure to satisfy either of the statutory requirements affects—so it says—only the weight of the evidence, not its admissibility. This interpretation is unsupported and unsupportable. First, it clashes directly with the plain language of the relevant provisions detailed above. Second, it would yield absurd results, effectively nullifying the exception set forth in subsection 3802(g). We are not free to violate the General Assembly's clear intent as evidenced by the unambiguous statutory language.

As noted above, subsection 3802(c) requires proof that the driver had a BAC of .16% or higher at the time he operated or controlled a vehicle. For all practical purposes, there is only one way in which the Commonwealth can establish that value: by chemical testing of a suspect's blood, breath, or urine. Obviously, if the test is performed upon blood that was drawn within two hours and returns a sufficiently high BAC, the Commonwealth can meet

its burden. If the draw does not occur within that time frame, the Commonwealth may still resort to the exception set forth in subsection 3802(g). It is critical to note that subsection 3802(g) uses the term "sufficient" rather than the term "admissible." The subsection states that, if good cause is demonstrated by the Commonwealth, the test results from a late collection of a chemical sample will be "sufficient" to establish the BAC element of § 3802(c). If the only way to prove the BAC element is by chemical testing, and if the results of the chemical testing are "sufficient" only if they are derived from blood drawn within the two-hour time frame or thereafter with good cause, then in circumstances where the Commonwealth can establish neither of these two conditions, the test results from a tardy blood draw necessarily are insufficient to prove the BAC element of subsection 3802(c) beyond a reasonable doubt.

By force of statute, the test results obtained by the Commonwealth in this case are insufficient to prove the BAC element of § 3802(c) against Bradwell. Admitting those results nonetheless, as the Commonwealth urges, effectively would nullify subsection 3802(g). Our canons of statutory construction oblige us, where possible, "to give effect to all [of a statute's] provisions." 1 Pa.C.S. § 1921(a). Moreover, we must construe statutes in a manner that avoids rendering "any provision as mere surplusage." *C.B. v. J.B.*, 65 A.3d 946, 951 (Pa. Super. 2013) (citing *In re Adoption of J.A.S.*, 939 A.2d 403, 406 (Pa. Super. 2007)). Subsection (g) provides the only statutory mechanism to introduce chemical samples drawn beyond the two-

hour time frame set forth in § 3802(c). As we have explained repeatedly, it is only upon good cause that such evidence can be introduced at trial. If the Commonwealth were permitted to introduce the evidence without a showing of good cause, then subsection 3802(g)'s exception would be a nullity, and we would have reduced the statutory language to mere surplusage at best. We are required to give effect to the General Assembly's statutes; we cannot ignore them, improve upon them, or create byways around them. Simply put, subsection 3802(g) is not an advisory provision that the Commonwealth may ignore at its will or convenience.

For many of the same reasons, admitting the evidence notwithstanding the statutory provisions would yield an absurd result. As noted earlier, for all practical purposes, there is only one way to prove that a DUI suspect had a BAC of .16% or higher: chemical testing. However, if the sample is not collected within the required time frame, or does not meet the statutory exception, subsection 3802(g) provides that the chemical testing is insufficient. Because those results can never amount to sufficient evidence, and because there is no other way to satisfy the BAC element, those results also can serve no corroborative purpose.

For these reasons, the test results from an untimely blood draw have no probative value. To admit evidence so lacking in probative value can serve only to prejudice the defendant. Pennsylvania Rule of Evidence 403 provides that relevant evidence may be precluded "if its probative value is outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. Introduction of evidence that by statute is insufficient to establish the relevant element where no other means exists to prove that element not only would inject undiluted prejudice into the case, but would also confuse and mislead the jury. The jury would be instructed on the elements of the crime, and, by necessity of subsection 3802(g), would be told that the inculpatory BAC test results are insufficient to establish the BAC element. We cannot expect that even the most reasonable jury will compartmentalize the evidence in such a way. The likelihood that the jury would perceive that evidence as inculpatory is patent. For this reason, admitting such evidence would produce an absurd and unreasonable result, an untenable consequence that we must avoid when fairly applying our rules of statutory construction. **See** 1 Pa.C.S. § 1922(1).

The Commonwealth further presents the closely related argument that 75 Pa.C.S. § 1547 amounts to a "statutory mandate" that requires admission of all BAC test results, no matter the circumstances. **See** Brief for the Commonwealth at 14. Section 1547 states that BAC test results "shall be admissible in evidence." 75 Pa.C.S. § 1547. Our canons of construction instruct us to assess the interplay between two statutes in a manner that renders neither entirely unenforceable. To hold that section 1547 overrides every other statutory provision essentially would be to flout and to nullify the two-hour time period mandated in subsection 3802(c) and the exception

crafted in subsection 3802(g). The General Assembly did not intend for section 3802's provisions to be so easily cast into the dustbin.

More importantly, the Commonwealth's logic is untenable: that the statute declares evidence to be admissible does not, *ipso facto*, mean that such evidence is not subject to any other provision in our laws. For instance, a defendant's confession is admissible—unless it was obtained unconstitutionally. Photographs of a murder victim's body are admissible— unless they are so graphic that the resulting prejudice would outweigh the photos' probative value. Indeed, all relevant evidence is admissible—unless that evidence conflicts with an overriding law. That is precisely the situation before us. BAC test results generally are admissible. However, those results have no evidentiary value in a prosecution for under subsection 3802(c) if the Commonwealth fails to satisfy either the timeliness requirements of that section or the exception provided in subsection 3802(g).

In sum, although the results of BAC tests generally are admissible, the trial court did not err by prohibiting their admission at a trial for subsection 3802(c). To admit such evidence would undermine the relevant provisions of section 3802, and would incurably prejudice the defendant. Our holding is limited to the factual and procedural scenario presented by this case, to wit, circumstances in which a defendant is charged with subsection 3802(c),

a blood sample is not obtained within two hours of driving the vehicle, and the Commonwealth cannot establish good cause for the delay.[2]

Order affirmed.

President Judge Gantman concurs in the result.

Judge Jenkins concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/10/2015

_____

[2] We emphasize this point primarily because the trial court's docket indicates that Bradwell also was charged with 75 Pa.C.S. § 3802(a)(1)— General Impairment. That provision states only that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." **Id.** Notably, subsection 3802(a)(1) does not require a particular BAC, nor does it contain any testing requirements or time constraints. We do not hold that the otherwise untimely drawn blood would be admissible to demonstrate a driver's general impairment in a prosecution maintained solely under subsection 3802(a)(1), nor do we hold to the contrary. That question must be deferred until it is properly presented.