**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CAMERON CHRISTOPHER LANTZY | : | |
| | : | |
| Appellant | : | No. 1568 MDA 2019 |

Appeal from the Judgment of Sentence Entered September 5, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006918-2018

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED AUGUST 26, 2020**

Cameron Christopher Lantzy appeals from the judgment of sentence entered following his conviction for driving under the influence of a controlled substance ("DUI") and driving without rear lights.[1] Lantzy challenges the sufficiency of the evidence and contends the trial court erred in denying his motion to preclude certain testimony. We affirm.

On September 13, 2018, while on patrol, Pennsylvania State Trooper Ryan Wildermuth pulled over Lantzy's vehicle because it had an inoperable third brake light. After speaking with Lantzy and having him perform several field sobriety tests, Trooper Wildermuth arrested Lantzy for DUI. Trooper Wildermuth obtained a warrant to test Lantzy's blood, but after four attempts

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 75 Pa.C.S.A. §§ 3802(d)(2) and 4303(b).

to draw blood failed, Trooper Wildermuth abandoned the effort. The Commonwealth charged Lantzy with the above offenses.

Lantzy filed a Motion in Limine seeking to exclude some of Trooper Wildermuth's testimony regarding his observations of Lantzy's condition before the arrest. The court granted the Motion as to any testimony of eyelid tremors, but held the remainder of the Motion in abeyance until the court heard testimony regarding Trooper Wildermuth's training. N.T., 8/29/19, at 4.

At the hearing, Trooper Wildermuth testified that he had eight years of experience in DUI investigations and drug enforcement, had personally conducted roughly 250 DUI investigations and arrests, and had assisted in over 300 DUI arrests. *Id.* at 6. In addition to standard field sobriety training, Trooper Wildermuth had participated in Advanced Roadside Impaired Driving Enforcement ("ARIDE") training. *Id.* At ARIDE, Trooper Wildermuth learned about various substances that cause impairment, including marijuana/THC, and the signs of impairment caused by each substance. *Id.* at 7.

Trooper Wildermuth testified that he had pulled Lantzy over due to a broken taillight, and had not used a radar instrument to determine whether Lantzy was speeding before he pulled him over. *Id.* at 8, 16. Trooper Wildermuth also had not followed Lantzy's car long enough to determine if Lantzy was swerving, and did not observe Lantzy driving erratically before he pulled him over. *Id.* at 16-17.

However, Trooper Wildermuth testified that once he began talking to Lantzy, he observed that Lantzy had "glassy bloodshot eyes. They were heavy

like he was tired." *Id.* at 9. Trooper Wildermuth detected a strong odor of fresh marijuana emanating from the vehicle, and, on the floor mat, "observe[d] what I recognized through training and experience as marijuana crumbs, essentially just little pieces of buds." *Id.*

Trooper Wildermuth testified that Lantzy's passenger told him he was in possession of marijuana and paraphernalia, and Trooper Wildermuth directed Lantzy to get out of the vehicle. *Id.* Lantzy told Trooper Wildermuth that "about an hour prior . . . he shared a blunt with friends." *Id.* at 10. Trooper Wildermuth could smell the odor of burnt marijuana on Lantzy's breath. *Id.*

Lantzy consented to take field sobriety tests ("FST's"). *Id.* Trooper Wildermuth first had Lantzy perform a "nine step walk and turn" test. *Id.* During the test, Trooper Wildermuth observed six signs indicating that Lantzy's judgment was impaired: (1) Lantzy "start[ed] too early," (2) he "lost balance while holding the start position," (3 & 4) he "stepped off the line . . . twice," (5) he "turned improperly during the second nine steps," and (6) "he took ten steps" instead of nine. *Id.* at 11. Trooper Wildermuth next administered the "one-leg stand" test", and observed Lantzy "after picking his foot up to start[,] put his foot down right away," before successfully completing the test. *Id.* at 11-13. Trooper Wildermuth then asked Lantzy to perform a "Romberg balance test," during which Lantzy was to estimate the passage of 30 seconds. *Id.* at 13. Trooper Wildermuth observed Lantzy swaying "an inch or two" during this test. *Id.* at 13, 24.

Trooper Wildermuth also asked Lantzy to stick out his tongue, and observed "large raised bumps and greenish discoloring" on the rear of his tongue. *Id.* at 14. He further noticed "reddening of the conjunctiva which is the lower eyelid," and "a lack of smooth pursuit in both eyes." *Id.* Trooper Wildermuth compared the latter condition to "a kid playing with polar opposite magnets. When the eyes come in, they reject." *Id.* Trooper Wildermuth attributed these effects to smoking marijuana. *Id.* Trooper Wildermuth testified that he would not have been comfortable letting Lantzy drive home, and arrested him for DUI. *Id.*

Once the parties finished examining Trooper Wildermuth, Lantzy's counsel renewed his objection to the testimony "regarding the green tongue, the eye tremors, the conjunctivitis test." *Id.* at 15. The court overruled the objection, stating, "I think he can testify regarding the observations. He can't tell me necessarily what it all means, some of it he can. But certainly he can testify as to the observations." *Id.* at 15-16. Lantzy's attorney responded, "That is true." *Id.* at 16.

The court announced that Trooper Wildermuth's hearing testimony would be incorporated into trial, which would proceed immediately. The Commonwealth introduced video footage from the dashboard camera of Trooper Wildermuth's vehicle, and rested.

Before announcing the verdict, the court recounted Trooper Wildermuth's testimony, and stated it "also had the opportunity to observe the dash cam video. Certainly the nine step walk and turn test showed a

- 4 -

number of signs of impairment." *Id.* at 33. The court convicted Lantzy on both counts, and sentenced him to serve six months' intermediate punishment and pay a fine. The court also gave Lantzy notice that the Pennsylvania Department of Transportation would be suspending his driving privileges. Lantzy appealed.

The issues Lantzy raises are as follows:

[1.] Did the trial court err in not granting [Lantzy's] motion in limine seeking to omit from evidence the Trooper's lay opinion testimony as to the degree of impaired driving in which he believed [Lantzy] was under, as well as, omitting from evidence the Trooper's observations of the "green tongue," [and] "horizontal gaze nystagmus test," . . . as irrelevant evidence?

[2.] Did the trial court err in finding sufficient evidence to establish a violation of Section 3802(d)(2) of the Vehicle Code in the absence of expert testimony as to causation? . . .

Lantzy's Br. at 26, 34 (reordered).[2]

## I. Motion in Limine

Lantzy contends that the court erred in denying his Motion in Limine. First, Lantzy argues the court should have precluded Trooper Wildermuth's testimony regarding Lantzy's green tongue and the results of the horizontal gaze nystagmus ("HGN") test. Lantzy argues the Commonwealth did not present this evidence as expert opinion, and these methods are not commonly known or understood attributes of using marijuana. Lantzy also claims there

---

[2] Lantzy raised additional issues in the Questions Presented section of his brief. We address only those issues for which Lantzy provided argument.

was no evidence that these conditions indicated any specific degree of marijuana impairment.

Next, Lantzy argues that the court should have excluded Trooper Wldermuth's lay opinion as to Lantzy's impairment, because Trooper Wildermuth was not admitted as an expert, and had no scientific basis for his opinion. Lantzy argues that although he had admitted to smoking marijuana an hour before the stop, and Trooper Wildermuth smelled burnt marijuana emanating from Lantzy's breath, these would not "inform the Trooper's opinion regarding the specific degree of impairment." Lantzy's Br. at 39. Lantzy also claims the court should have excluded all of the above evidence as irrelevant.

We review a decision regarding the admission of evidence for an abuse of the trial court's discretion. **Commonwealth v. Gause**, 164 A.3d 532, 537 (Pa.Super. 2017) (*en banc*).

Lantzy waived his challenge to the ruling on his Motion in Limine by agreeing with the trial court when it announced its ruling. When the court stated that the trooper could testify about his observations, but could not "necessarily" explain what "it all means, some of it he can," Lantzy's counsel replied, "That is true." N.T. at 15-16. He cannot now complain that that ruling was incorrect.

Even assuming that the court improperly denied the Motion in Limine, the error was at most harmless. Evidence admitted in error is harmless if (1) its prejudicial effect was *de minimis*; (2) it was cumulative of other,

substantially similar, and properly admitted evidence; or (3) the properly admitted evidence of guilt was so overwhelming in comparison to the prejudicial effect caused by the error that the error could not have contributed to the verdict. *See Gause*, 164 A.3d at 540.

Any error in admitting the trooper's testimony about Lantzy's gaze was not prejudicial above a *de minimis* amount. Lantzy did not argue to the trial court that Trooper Wildermuth's testimony about Lantzy's gaze was testimony about an inadmissible HGN test, and in fact, the trial court did not consider it as such. The trial court stated in its Pa.R.A.P. 1925(a) opinion that the trooper had not testified about an HGN test. As Lantzy then proceeded to a bench trial, we cannot say that Lantzy sustained anything more than *de minimis* prejudice.

Furthermore, allowing the testimony about Lantzy's gaze and tongue was at most harmless because the evidence was offered to show that he was under the influence of marijuana and there was a lot of other evidence that he was under the influence. Lantzy admitted to having smoked marijuana an hour beforehand, and the trooper observed marijuana in Lantzy's vehicle and smelled it on his breath.

We also find no merit to Lantzy's argument that the court should have excluded Trooper Wildermuth's lay opinion that Lantzy was impaired. Trooper Wildermuth's lay opinion was informed by a number of factors he was readily able to perceive and understand based on his training and experience, and "not based on scientific, technical, or other specialized knowledge." *Gause*,

164 A.3d at 538; Pa.R.E. 701. His testimony aided the court in determining whether Lantzy had consumed marijuana, and whether Lantzy was impaired by its use. Pa.R.E. 701. The court properly admitted the lay opinion.

## II. Sufficiency of the Evidence

Lantzy argues that there was insufficient evidence to convict him of DUI. We consider Lantzy's challenge to the sufficiency of the evidence pursuant to the following standard:

> When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt.

*Commonwealth v. Green*, 204 A.3d 469, 484 (Pa.Super. 2019) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* at 484-85 (quoting *Commonwealth v. Brown*, 23 A.3d 544, 559 (Pa.Super. 2011) (*en banc*)). As it is a matter of law, we review the issue of the sufficiency of the evidence *de novo*. *Commonwealth v. Hall*, 199 A.3d 954, 960 (Pa.Super. 2018), *appeal denied*, 206 A.3d 1028 (Pa. 2019). We do not consider the weight or credibility of the evidence when reviewing the sufficiency of the evidence. *Commonwealth v. Knox*, 219 A.3d 186, 195 (Pa.Super. 2019), *appeal denied*, No. 495 EAL 2019, 2020 WL 1527230 (Pa. Mar. 31, 2020).

Lantzy argues that his performance on the FST's did not show "obvious signs of a lack of coordination to a degree that would make one believe he lacked the ability to drive safely." Lantzy's Br. at 30. Lantzy claims he performed the walk and turn test with only "subtle imperfections in an otherwise acceptable performance" of the test; that although he put his foot down at the start of the one leg stand test, he "went on to successfully [complete] the test without issue"; and that he estimated the time accurately during the Romberg test, and only swayed an inch or two while his eyes were shut. *Id.* at 30-31. Lantzy argues he did not perform any worse than "any other completely sober teenager . . . at night with emergency lights flashing in [his] face, presumably [testing] for the first time, and without the opportunity for a do-over." *Id.*

Next, Lantzy argues that there was no evidence that he had driven erratically, as Trooper Wildermuth did not observe anything wrong with Lantzy's driving. Lantzy also points out that there was no obvious evidence that Lantzy had recently been smoking marijuana, such as billowing smoke or burnt marijuana. Finally, Lantzy argues that without expert testimony regarding Lantzy's level of impairment, the results of a blood test, or evidence of erratic driving, the evidence was insufficient to support the conclusion that Lantzy was impaired to a degree that had prevented him from driving safely.

Section 3802(d)(2) prohibits an individual from driving a motor vehicle while "under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive . . . the vehicle." 75 Pa.C.S.A §

3802(d)(2). This section does not require the Commonwealth to prove there was a specific amount of a drug in the driver's system, or necessitate expert testimony in every case. **Commonwealth v. Griffith**, 32 A.3d 1231, 1239 (Pa. 2011); **Commonwealth v. Tarrach**, 42 A.3d 342, 345 (Pa.Super. 2012). Whether expert testimony is necessary is a case-by-case determination, and depends upon "the specific drug at issue" and "the nature and overall strength of the Commonwealth's evidence." **Griffith**, 32 A.3d at 1239. FST's "are generally accepted methods for ascertaining alcohol or drug impairment at the time of a traffic stop," and "performing poorly may be sufficient for a finding of impairment." **Commonwealth v. Salter**, 121 A.3d 987, 996-97 (Pa.Super. 2015). There is no requirement that the Commonwealth produce evidence of erratic driving to establish the inability to drive safely. **Id.** at 995.

Here, Trooper Wildermuth testified that Lantzy showed signs of impairment during the FSTs, and had glassy, bloodshot eyes; had the odor of burnt marijuana on his breath; and admitted to smoking marijuana an hour prior to the stop. He also said that during the FSTs, Lantzy exhibited multiple instances of an inability to maintain balance and other indicators of intoxication. Viewed in the light most favorable to the Commonwealth, this evidence was sufficient to establish that Lantzy was under the influence of marijuana, and that his ability to drive safely was impaired. **See, e.g.**, **Commonwealth v. Hutchins**, 42 A.3d 302, 308-09 (Pa.Super. 2012) (evidence was sufficient to prove DUI under Section 3802(d)(2), without expert testimony, where Commonwealth presented evidence that the

defendant caused a motor vehicle accident, was unusually calm when speaking with police officers immediately afterward, and confessed that he had smoked marijuana earlier in the day). Lantzy's arguments that he performed other aspects of the FSTs properly goes to the weight, and not the sufficiency of the evidence. *See generally Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). As the Commonwealth presented sufficient evidence to sustain the conviction, we affirm Lantzy's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/26/2020