J-A26022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                        :            PENNSYLVANIA
                        :
           v.             :
                        :
                        :
RAYMOND JANUARY JASZCZAK      :
                        :
           Appellant        :      No. 469 EDA 2023

Appeal from the Judgment of Sentence Entered January 27, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003094-2021

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:            **FILED MARCH 15, 2024**

Raymond January Jaszczak appeals from the judgment of sentence entered following his convictions for driving under the influence ("DUI") – combination of alcohol and a drug, and for other offenses: restriction on alcoholic beverages, operation of vehicle without official certificate of inspection, prohibition on expenditures for emission inspection program – evidence of emission inspection, and violation of use of certificate of inspection.[1] He challenges the denial of his motion to dismiss pursuant to Pa.R.Crim.P. 600 and the sufficiency of the evidence for his DUI conviction. We affirm.

Jaszczak's convictions stem from a traffic stop on October 9, 2020, after which Trooper Isaiah Slonaker arrested Jaszczak for DUI and traffic-related

---

[1] 75 Pa.C.S.A. §§ 3802(d)(3), 3809(a), 4703(a), 4706(c)(5), and 4730(a)(1), respectively.

offenses. The Commonwealth filed a criminal complaint on November 24, 2020, and the court held a preliminary hearing on May 24, 2021, and a pretrial conference on June 3, 2022. The case was then scheduled for a "call of the list trial hearing," for September 30, 2022. Two days before that hearing, on September 28, 2022, Jaszczak moved to dismiss under Rule 600.

At a hearing on the motion, the parties agreed that the mechanical run date was August 31, 2022,[2] which was one year after the lifting of the COVID-19 judicial emergency, because while the emergency orders were in effect, there had been a "moratorium" on Rule 600. **See** N.T., 10/31/22, at 4-5. The Assistant District Attorney ("ADA") handling the case testified that she was assigned to it in July 2022, one month before the mechanical run date. **Id.** at 6. She said that from the lifting of the judicial emergency through the Rule 600 hearing, "[t]here was a large backlog of cases." **Id.** at 14. She conceded she did not ask the court to schedule the trial before the mechanical run date. **Id.** at 17. She testified that she did not know whether the Commonwealth had "specifically requested any kind of hearing during the pendency of this case[,]" or whether the prior ADA assigned to the case "had made a request or not." **Id.** at 16. She said that from the lifting of the judicial emergency, on August

---

[2] **But see Commonwealth v. Lear**, 290 A.3d 709, 720 (Pa.Super.), *appeal granted*, 305 A.3d 541 (Pa. 2023) (holding "the plain language of the orders reflects that Montgomery County did not continue its unqualified suspension of Rule 600 beyond May 31, 2020" and remanding for a hearing to "afford the Commonwealth the opportunity to prove its diligence"). We need not remand here because the parties have agreed on the mechanical run date, and moreover, the trial court already determined that the Commonwealth acted with due diligence.

31, 2021, to the first pretrial conference, on June 3, 2022, the Commonwealth was ready for trial. *Id.* at 13.

The Commonwealth also presented the testimony of the deputy court administrator responsible for scheduling criminal matters for pretrial and "call of the trial list" hearings. *Id.* at 22. She testified that in January 2021, they began listing pretrial conferences for cases that had already been scheduled for one before the pandemic. *Id.* at 24. After May 2021, they started to list pretrial conferences for all cases, working from oldest to newest, giving priority to cases where the defendant was incarcerated. *Id.* at 26-27. However, she explained that there was a large backlog, at the peak of which, in November 2021, 9,000 criminal cases were pending, when there were "usually" 4,000. *Id.* at 26. In her words, the instant case "was waiting in line behind thousands of other cases[.]" *Id.* at 25.

Nonetheless, she said that she had honored requests to move cases ahead on the list and schedule them earlier than otherwise would have occurred. She said she had received such requests "from the District Attorney's Office, from the private defense bar, from the Public Defender's Office" and even "from *pro se* defendants asking me to list their cases because it's holding up their life." *Id.* She said she had expedited cases "over a hundred, but probably less than 200" times, and if she had gotten a request to schedule the instant case for a pretrial hearing, she would have listed it. *Id.* at 26. At the same time, she said that if she had gotten requests in too

many cases, the "request system" would have been swamped, and she would have had to stop taking requests. ***Id.***

Regarding the call of the trial list hearings, she testified that these were hearings where the Commonwealth and defense inform the court whether a case will proceed to trial. ***Id.*** at 27. As with pretrial hearings, she said she prioritizes scheduling cases in which the defendant is incarcerated, and then works from "oldest to newest," putting as many as "can fit" on the assigned judge's schedule for each hearing. ***Id.*** at 28-29. She believed the judge assigned in this case was at the time scheduling 80 cases at each call of the trial list hearing. ***Id.*** at 29. She said the instant case was listed for a call of trial list hearing in September 2022, and was not scheduled in July or August 2022 because she was "certain that there [were] older docket numbers filling up the earlier list." ***Id.***

The court denied the motion and determined that the Commonwealth had exercised due diligence, considering the backlog of cases. Jaszczak proceeded by way of a stipulated bench trial on January 27, 2023. ***See*** N.T., Stipulated Bench Trial, 1/27/23, at 7-9. The parties stipulated to the following facts:

> On October 9th, 2020, at 11:12 a.m., Trooper Isaiah Slonaker . . . engaged in a traffic stop of a vehicle for fraudulent inspection stickers. This traffic stop occurred after Trooper Slonaker observed the vehicle traveling northbound on Main Street in Pennsburg Borough, Montgomery County, which is a public roadway.
>
> Upon approaching the vehicle, Trooper Slonaker observed . . . Jaszczak[] sitting in the driver's seat of the vehicle.

Trooper Slonaker observed a strong odor of alcohol emanating from the vehicle. He confirmed the inspection stickers were, in fact, fraudulent and not valid.

He observed [Jaszczak's] eyes to be bloodshot and glassy and the trooper noted that [Jaszczak] was very talkative. [Jaszczak] admitted to the trooper that he had consumed two beers and a shot of alcohol earlier in the morning.

[Jaszczak] performed field sobriety tests. The trooper observed that [Jaszczak] could not adequately complete the Romberg balance test. The trooper further explained additional field sobriety tests, but [Jaszczak] was unable to perform those tests as he was having difficulties standing in general and standing still. The trooper performed a portable breath test with the results positive for the presence of alcohol.

At that point, based on his knowledge, training and experience, the trooper formed the opinion that [Jaszczak] was under the influence of drugs and alcohol to a point that he could not safely operate a motor vehicle. Prior to towing [Jaszczak's] vehicle from the scene, consent to search the vehicle was granted and an open container of alcohol was found in the middle console of the vehicle.

[Jaszczak] did consent to submit to a blood – chemical blood test and Skippack EMS performed a blood draw at 12:31 p.m. which is within two hours of when the trooper observed [Jaszczak] driving in his vehicle.

The blood test results from NMS indicated that at the time of the blood draw that [Jaszczak] had in his system nineteen nanograms per milliliter of amphetamine, that's plus or minus a standard deviation of four; he had seven-and-one-half grams per milliliter of methamphetamine in his blood with plus or minus a standard deviation of nineteen; and eleven-and-a-half grams per milliliter of Oxycodone in his blood and that's plus or minus a standard deviation of two. He also had a blood alcohol concentration of .054 percent.

*Id.* The court found Jaszczak guilty of the above-referenced offenses and sentenced him to six months of restrictive DUI probation. This timely appeal followed.

- 5 -

Jaszczak raises two issues before this Court:

> I. Did the court err in dismissing [Jaszczak's] motion to dismiss because the Commonwealth did not exercise due diligence by failing to ask the court administrator to list the case for trial prior to the running of Pa.R.Crim.P. 600 period?
>
> II. Did the court err in finding [Jaszczak] guilty of driving under the influence at a stipulated bench trial because the evidence failed to show that [Jaszczak] was driving unsafely?

Jaszczak's Br. at 3.

In his first issue, Jaszczak claims that the Commonwealth did not exercise due diligence in bringing his case to trial. He maintains that because he did not request any continuances between the lifting of the judicial emergency and the mechanical run date, the adjusted run date was the same as the mechanical run date, August 31, 2022. He argues that the Commonwealth did not act with due diligence because it failed to request a trial date before the adjusted run date. **See id.** at 9 (citing **Commonwealth v. Hawk**, 597 A.2d 1141, 1145 (Pa. 1991)).

The Commonwealth counters that it acted with due diligence. It points out that the court was scheduling cases pursuant to court policies that gave priority to older cases and cases in which the defendant was incarcerated. It emphasizes the testimony of the court administrator that there were more than 9,000 cases in the backlog and if the Commonwealth had asked the court to schedule all such cases, the court could not have accommodated all such requests:

Although the Commonwealth did not specifically request that this case be rescheduled for an earlier date, where there were over 9000 cases similarly situated it was impossible for the Court Administrator to accommodate such requests in every case, including in this case. Such requests would have been pointless and futile, especially in this case which involved a defendant who was not incarcerated at the time making this case a lesser priority for scheduling purposes under the Court Administrator's scheduling policies which were beyond the control of the District Attorney's Office.

Com.'s Br. at 9.

We review the denial of a Rule 600 motion for an abuse of discretion. *See Commonwealth v. Harth*, 252 A.3d 600, 614 n.13 (Pa. 2021). We limit our scope of review to the evidence from the Rule 600 motion hearing and the trial court's findings of fact. *See Commonwealth v. Watson*, 140 A.3d 696, 698 (Pa.Super. 2016) (citation omitted). We "view the facts in the light most favorable to the prevailing party." *Id.* (citation omitted).

Rule 600 provides that a trial must "commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). To determine whether a Rule 600 violation has occurred, a "court must first calculate the 'mechanical run date,' which is 365 days after the complaint was filed," and then must "account for any 'excludable time' and 'excusable delay.'" *Commonwealth v. Johnson*, 289 A.3d 959, 981 (Pa. 2023) (quoting *Commonwealth v. Goldman*, 70 A.3d 874, 879 (Pa.Super. 2013)). The court then calculates the adjusted run date by adding any excludable time to the mechanical run date. "For purposes of [Rule 600(A)], periods of delay at any stage of the proceedings caused by the Commonwealth when the

- 7 -

Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

"Due diligence is fact specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010). Delay caused by the court is excludable only if the Commonwealth shows it exercised due diligence at all relevant times throughout the proceedings. *Johnson*, 289 A.3d at 982 (citing *Harth*, 252 A.3d at 603).[3]

Here, the parties agreed that the mechanical run date was August 31, 2022. The trial court explained its conclusion that the Commonwealth acted with due diligence as follows:

> The testimony shows [defense counsel] entered his appearance on 10/26/21. Discovery was ready before the first pre-trial conference which was June 3rd, '22. At that time, it was moved to the call of the trial list according to the court administrator assistant or deputy court administrator. It went on the 9/30/22 call of the trial list. Due to the backlog of cases, the priority to scheduling incarcerated defendants first and due to the sheer number of cases pending in the system post COVID, the [c]ourt is still dealing with a tremendous backlog and far greater than pre COVID.

---

[3] "[A] trial court may invoke 'judicial delay' in order to deny a defendant's Rule 600 motion to dismiss only after the Commonwealth has demonstrated that it complied with the due diligence requirements of Rule 600 at all relevant periods throughout the life of the case." *Harth*, 252 A.3d at 603.

I find that the prosecution was diligent in this case in trying to get it prepared or trying to get it to trial and could not do so, despite their due diligence due to the overwhelming number of cases pending.

And the DA is not responsible for scheduling. The court administrator was trying to schedule the cases in some sort of logical sequence, trying to work through the backlog. Cases . . . with defendants not incarcerated, were scheduled oldest to newest. This case fell in line, as we heard from the testimony, behind numerous other cases.

The defense argument that the Commonwealth should be requesting a special listing I don't think is workable. Requesting special listings for every case with a post COVID backlog and circumstances is simply unworkable and not a solution.

So I'm not going to dismiss this case. I find the Commonwealth did act with due diligence and, despite due diligence, couldn't get this case to trial due to circumstances beyond the control of the ADA's office, and the motion is denied.

N.T., 10/31/22, at 36-37.

The court explained further in its Pa.R.A.P. 1925(a) opinion:

The delay in bringing this matter to trial prior to the mechanical run date of August 31, 2022, was the result of circumstances beyond the Commonwealth's control. Due to the judicial emergency, the Montgomery County Court of Common Pleas was left with a significant backlog of cases which continues to severely impair its ability to schedule cases prior to any imminent Rule 600 deadlines. The backlog impaired the court's ability to schedule this matter for trial prior to August 31, 2022. The record does not show any lack of diligence by the Commonwealth or that it was not prepared to go to trial during the periods of judicial delay [due to the judicial emergency orders]. The Commonwealth filed timely bills of information and turned over full discovery in an expeditious manner. The Commonwealth also did not request any continuances and no action on the part of the Commonwealth resulted in this matter being tried past the mechanical run date of August 31, 2022.

> The only time potentially attributable to the normal progression of this case, and therefore not excludable, extends from August 31, 2021 to the Commonwealth's transmittal of the discovery materials on May 18, 2022, a period of 260 days. Consequently, of the 794 days between the filing of the criminal complaint and [Jaszczak's] trial, 534 are due to judicial delay beyond the Commonwealth's control and are excludable.

Trial Court Opinion, 3/17/23, at 9-10 (footnote and citation omitted).

This was not an abuse of discretion. The record supports the court's conclusion that the Commonwealth acted reasonably under the circumstances. To the extent that Jaszczak claims that **Hawk** required the Commonwealth to ask for a trial date before the expiration of the mechanical run date, we disagree. The Court in **Hawk** determined that the Commonwealth "failed to take any affirmative action to get the case moving by listing it for trial when the trial judge was ill and then on vacation[.]" **Hawk**, 597 A.2d at 1145. The Court also rejected the Commonwealth's argument that there was a backlog of cases, finding that "cases that were assigned pursuant to the Individual Judge Calendar system were in fact being sent to other judges." **Id.** at 1146. Here, unlike **Hawk**, the delay in listing the case for trial was not due to a particular judge's calendar and illness but rather the extensive backlog of cases due to the COVID-19 pandemic.

In his remaining issue, Jaszczak maintains the evidence was insufficient to support his DUI conviction because there was allegedly no evidence that he drove in an unsafe manner. He notes that Trooper Slonaker did not testify that he saw Jaszczak commit any moving vehicle violation. He also argues

that though there may be circumstantial evidence of his intoxication, this is

negated by the direct evidence of his safe driving.

Our standard of review is well settled:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated, and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Edwards*, 229 A.3d 298, 305–306 (Pa.Super. 2020)

(brackets and citations omitted).

The crime of driving under the influence of alcohol and drugs is defined

as follows:

> **(d) Controlled substances.** — An individual may not drive, operate, or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> * * *

- 11 -

> (3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs *the individual's ability* to safely drive, operate, or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(3) (emphasis added). To sustain a conviction under Section 3802(d)(3), the Commonwealth must show that: 1) the defendant's ability to safely drive, operate or be in physical control of a vehicle was impaired and 2) that the impairment was due to being under the influence of alcohol and a drug or combination of drugs. **See Commonwealth v. Griffith**, 32 A.3d 1231, 1237 (Pa. 2011).

Here, it is true that Trooper Slonaker did not observe Jaszczak commit any motor vehicle violation and did not observe Jaszczak driving in an unsafe manner. However, evidence of Jaszczak's unsafe driving was not required to sustain the conviction under Section 3802(d)(3). Rather, the Commonwealth was required to show that Jaszczak was under the influence of alcohol and drugs and that this impairment affected *his ability* to safely drive, operate, or be in physical control of his vehicle. The evidence supports such a finding. The blood test results showed that Jaszczak had amphetamine, methamphetamine, and oxycodone in his system. Jaszczak also had a BAC level of .054 percent. Trooper Slonaker observed that Jaszczak's eyes were bloodshot and glassy. Additionally, Jaszczak could not adequately complete or perform the varying field sobriety tests due to his "difficulties standing in general and standing still." N.T., Stipulated Bench Trial, at 8. The evidence was sufficient to sustain the conviction under Section 3802(d)(3).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>3/15/2024</u>