J-S01024-24

2024 PA Super 83

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ANTHONY JOHN CARABALLO | : | |
| | : | |
| Appellant | : | No. 539 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 7, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0005006-2021

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY KUNSELMAN, J.:                    **FILED: APRIL 25, 2024**

A jury convicted Anthony John Caraballo of driving under the influence ("DUI") of controlled substances, and the trial court convicted him of related, lesser charges.[1] He appeals from the judgment of sentence, imposing two-years-nine-months to six years' incarceration. Caraballo rejected a request that he submit to a blood-draw test. That rejection, along with other evidence, was legally sufficient to convict him of DUI, and we affirm.

Around 6:30 a.m., on October 19, 2021, as dawn broke on the horizon, State Trooper Anthony Stoltzfus headed southbound on Route 472 in his patrol car. Caraballo drove a pickup truck immediately in front of him. The truck's tires hit or rode on the white and yellow lane lines repeatedly for two minutes. *See* Commonwealth's Ex. 1, Patrol-Car-Dashboard-Camera Video (Redacted)

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 75 Pa.C.S.A. §§ 1501(a) (driving without a license), 1543(b)(1)(iii) (driving with a suspended license), 3309(1) (disregarding the traffic lane), 3714(a) (careless driving), and 3802(d)(2) (DUI – general impairment by controlled substances).

at 0:04, 0:26, 0:36, 0:42, 0:47-0:58, 1:00-1:03, 1:14, 1:20, 1:26, 1:38-1:43. The trooper initiated a traffic stop. *See id.* at 1:39-2:02.

Caraballo and the trooper pulled their vehicles into the parking lot of a gas station. Trooper Stoltzfus approached the window of the pickup truck to speak with the driver and to investigate a possible DUI. Caraballo identified himself, but his "speech was extremely slurred." N.T., 11/8/22, at 22. "He was disheveled." *Id.* at 19. There was no smell of alcohol or drugs in the air. When asked if he was on anything, Caraballo admitted to having taken Vivitrol. The trooper did not know what Vivitrol was or its impact on driving ability. *See id.* at 40.

Caraballo moved lethargically. For example, when Trooper Stoltzfus asked him for his license and registration, instead of quickly reaching for them, Caraballo "mov[ed] . . . stuff around in a manner that wasn't like he was looking[. He was] kind of slowly moving throughout the vehicle." *Id.* at 20. Based on five years of police experience, impairment-recognition training, and prior interactions with people who had taken drugs, the trooper saw those indicia as "consistent with people [who were] under the influence of some kind of drugs." *Id.* at 23. Thus, he asked Caraballo to exit the vehicle and to take a string of field sobriety tests. *See id.* at 25-26.

Caraballo complied and manifested many indicators of impairment. During the instructions phase of the heel-toe test, he "was unable to stay in the starting position . . . He kept on moving his leg from [the starting] position to regain his balance." *Id.* at 29. Then, when performing the walk phase,

Caraballo repeatedly missed heel to toe, stepped off line, and used his arms to keep his balance. *See* Commonwealth's 1 at 12:05-12:35. When he turned around, he lost his balance and stepped on his foot. ***See id.***

The one-leg-stand test also revealed signs of impairment. Upon raising his right leg, Caraballo began to wobble and had to use his arms to maintain balance. He only kept his foot off the ground for a count of 19 seconds, even though the test was supposed to last 30 seconds. ***See id.*** at 14:02-14:40.

Caraballo told Trooper Stoltzfus that he was tired, because he had been working all night. However, the trooper had previously put eight to ten tired drivers through the field sobriety tests. "They pass[ed]," because the trooper did not "see any indicators that [they were] under the influence of something." N.T., 11/8/22, at 34. According to the trooper, "Most of the time, if somebody is just tired and I pull them over, their demeanor changes rapidly . . . If you're tired and . . . get pulled over, most of the time, it perks you up." *Id.* at 35. Caraballo never perked up during the traffic stop or sobriety tests.

The trooper arrested Caraballo for DUI (controlled substances) and took him to a nearby hospital for chemical testing. During their ride in the patrol car, Caraballo kept falling asleep. When they arrived, Trooper Stoltzfus presented him with a DL-26 Form concerning "his rights, punishment that can happen if he [refused to] submit to a blood draw, and why [the trooper] request[ed] the blood draw . . . ." *Id.* at 39. Caraballo refused the blood-draw test, even though the trooper "explained to him that this [was] his chance to prove . . . there was nothing in his system." *Id.* at 39-40.

- 3 -

The case proceeded to a jury trial.  At the close of trial, when asked if Caraballo had any objections to the proposed charge, defense counsel replied, "No, Your Honor." *Id.* at 91; *see also id.* at 134 (similarly having no objection after the jury charge).

The jury convicted Caraballo of DUI; thereafter, the court convicted him of all related offenses.  The court imposed the above sentence, and this timely appeal followed.

Caraballo raises the following two appellate issues:

1. Was the evidence presented . . . insufficient to prove beyond reasonable doubt that . . . Caraballo's inability to drive safely was caused by a drug or combination of drugs?

2. Did the trial court err when it instructed the jury . . . ?

Caraballo's Brief at 8 (some punctuation omitted).  We take the issues in turn.

First, Caraballo claims the Commonwealth offered insufficient evidence to convict him of DUI (controlled substances).  He concedes that "there was sufficient evidence to prove [he] was unable to drive safely . . . ." *Id.* at 20.  However, Caraballo believes there was "no evidence . . . that [he] was under the influence of any drug, let alone to a degree which rendered him incapable of safe driving." *Id.* at 20-21.  He argues that, even though "Trooper Stoltzfus testified that . . . Caraballo was 'under the influence of some sort of controlled substance or combined substances,' [the trooper] was not qualified as an expert witness in recognizing drug intoxication . . . ." *Id.* at 21.  Thus, Caraballo contends the trooper's opinion "was insufficient to prove that [he]

- 4 -

was, in fact, under the influence of a drug or combination of drugs to a degree which rendered him incapable of safe driving." ***Id.***

Caraballo's challenge to the sufficiency of the Commonwealth's evidence presents a pure question of law. Thus, our "standard of review is *de novo*, and our scope of review is plenary . . . ." ***Commonwealth v. Neysmith***, 192 A.3d 184, 189 (Pa. Super. 2018). "When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Id.***

The legislature has dictated, "an individual may not drive . . . a vehicle," if he "is under the influence of a drug or combination of drugs to a degree which impairs [his] ability to safely drive . . . the vehicle." 75 Pa.C.S.A. § 3802(d)(2) (some capitalization omitted). This section of the Vehicle Code "does not require that any specific quantity of a drug be present in a defendant's blood or urine." ***Commonwealth v. Griffith***, 32 A.3d 1231, 1236 (Pa. 2011). Thus, to establish a *corpus delicti* under Section 3802(d)(2), the prosecution must only prove, beyond reasonable doubt, that a defendant used a drug or drugs, in any quantity, that caused him to drive unsafely. "This provision, by its plain text, does not . . . specify any particular manner by which the Commonwealth is required to prove that the defendant was under the influence of a drug." ***Id.*** at 1239.

As Caraballo recognizes, Trooper Stoltzfus opined that he was under the influence of a drug or drugs that impaired Caraballo's ability to drive safely on

the morning of October 19, 2021. However, he suggests that opinion was legally insufficient, because the trooper was not an expert witness. Such an argument goes to the admissibility of the opinion, not its legal sufficiency once the opinion was of record.

Whether a witness may offer opinion testimony is a matter for the Rules of Evidence. *See* Pa.R.E. 701-704. As such, whether a witness may offer a particular opinion asks whether the opinion is "competent," not whether the opinion is legally sufficient to prove an element of the offense charged.

Indeed, "competent" is synonymous with admissibility. "**Competent evidence. 1.** See *admissible evidence.*" BLACK'S LAW DICTIONARY at 674 (10th Ed. 2014). "Admissible evidence" is "relevant and is of such a character (e.g., not unfairly prejudicial, based on hearsay, or privileged) that the court should receive it." *Id.* Thus, "competent evidence" is relevant evidence, which no other rule of evidence or law prohibits the trial court from admitting.[2] As such, Caraballo's contention that Trooper Stoltzfus was not qualified as an expert on drug intoxication goes to the admissibility of his opinion, not its legal sufficiency to prove causation under Section 3802(d)(2).

Caraballo did not object to the trooper offering opinion testimony during the trial on the grounds that he was not an expert. "A party may claim error

---

[2] The classic example of relevant, incompetent evidence are drugs that police seize during a warrantless search in violation of the two constitutions. **See** U.S. Const. amend. IV, Pa. Const. art. I § 8. Those drugs are **highly** relevant to prove the defendant's guilt. However, the constitutions' exclusionary rules trump the rules of evidence and render the drugs incompetent evidence.

in a ruling to admit . . . evidence only if . . . a party, on the record, makes a timely objection, motion to strike, or motion *in limine* . . . ." Pa.R.E. 103(a)(1)(A). Because Caraballo did not object to the trooper offering an opinion at trial, any claim that the trial court abused its discretion by admitting the trooper's opinion that a drug or combination of drugs caused Caraballo's unsafe driving is waived. **See id.** Once Trooper Stoltzfus' opinion was admitted without objection, the jury was free to accept it as true.

Trooper Stoltzfus told the jury that, based on his observations of Caraballo's truck and during the traffic stop, the trooper believed Caraballo's use of a drug or drugs impaired his driving ability. Specifically, the trooper derived that opinion from Caraballo's (1) physical condition, (2) admission to having taken Vivitrol, (3) slow reaction time, (4) slurred speech, (5) poor performance on the field sobriety tests, and (6) absence of an alcohol smell. In other words, Trooper Stoltzfus, who had several previous interactions with people who were under the influence of drugs, formed the opinion that Caraballo had similarly used a drug or drugs that caused his impairment. As such, the trooper's opinion provided the causal link between the drug or drugs in Caraballo's system and his unsafe driving as Section 3082(d)(2) requires.

Further, our review of the video reinforces Trooper Stoltzfus's opinion. **See** Commonwealth's Ex. 1. It revealed Caraballo's drug-impaired conduct, lack of balance, and slurred speech. The indisputable video evidence confirms the trooper's in-person opinion that Caraballo was on something. Because there was no indication Caraballo had consumed alcohol, Trooper Stoltzfus

reached the next most logical conclusion: namely, a drug or a combination of drugs caused Caraballo's altered consciousness and impaired his driving.

Also, although the parties agree "there was no . . . evidence that Vivitrol was an impairing substance," Commonwealth's Brief at 5, this Court does not. When we view the video in the light most favorable to the Commonwealth, we observe that Caraballo began to confess to the trooper that he was **not** able to drive while taking Vivitrol and then changed his statement. When Caraballo said he was tired from working all night, Trooper Stoltzfus replied, "I've seen tired drivers, and I've seen drivers who are impaired. And they look pretty similar." Commonwealth's Ex. 1 at 7:39-7:43.

Caraballo then volunteered, "I've had to take . . . I - - I take Vivitrol." **Id.** at 7:44-7:46.

"Are you supposed to be driving on that?" the trooper asked. **Id.** at 7:51-7:52.

Caraballo started to say, "Ah, n - -," but then quickly said, "Huh? Yeah!" **Id.** at 7:52-7:53. Based on that video evidence, the jury could have found that Caraballo was about to say "Ah, no," caught himself, and then changed his answer to a lie.[3]

_____

[3] Although not determinative to our analysis, we note that, according to the Food and Drug Administration, two of Vivitrol's most common side effects are "somnolence and dizziness." FDA, "VIVITROL Label" at 18, available at https://www.accessdata.fda.gov/drugsatfda_docs/label/2010/021897s015lbl.pdf (last visited 3/27/24). Indeed, while taking Vivitrol, a person "should avoid driving or operating heavy machinery until they have determined how VIVITROL affects them." **Id.** at 25.

Finally, and most incriminating of all, Trooper Stoltzfus gave Caraballo the opportunity to provide the physical evidence to exonerate himself, but Caraballo refused. The trooper took Caraballo to a hospital, informed him of the civil penalties for refusing a blood-draw test, and had Caraballo sign the DL-26 Form. Caraballo chose the civil penalties over chemical testing.

"In any . . . criminal proceeding in which the defendant is charged with a [DUI] . . . , the fact that the defendant refused to submit to chemical testing . . . may be introduced in evidence along with other testimony concerning the circumstances of the refusal." 75 Pa.C.S.A. § 1547(e). While no presumption of guilt automatically arises from the refusal, the jury may consider the refusal "along with other factors concerning the charge." *Id.* Otherwise, one could use drugs, "drive under the influence of those drugs, and avoid prosecution entirely simply by refusing a blood test. We refuse to countenance this absurd result." *Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1268 (Pa. Super. 2010) (footnote omitted).

Like the trial court, we hold the jury could reasonably infer under Section 1547(e) that Caraballo knew he took **something** (or several somethings) that impaired his driving ability. By refusing a blood-draw test, Caraballo deprived the Commonwealth of the scientific proof of what drug or drugs, if any, were inside him when he was driving unsafely. Therefore, the jury logically inferred, beyond any reasonable doubt, that Caraballo knew he had a drug or drugs in him that he wished to conceal from the trooper, because he knew they rendered him unfit to drive. As the trial court opined, the jury could find that

Caraballo's "refusal to have a blood test [showed] consciousness of guilt." Trial Court Opinion, 5/31/23, at 11.

Where, as here, the finder of fact draws the reasonable inference that a defendant was conscious of his own guilt and hoped to escape culpability by refusing chemical testing, that refusal is legally sufficient evidence that the defendant was DUI. Thus, the Commonwealth offered sufficient evidence to prove, beyond a reasonable doubt, that Caraballo used a drug or drugs that caused his unsafe and impaired driving.

We dismiss Caraballo's first appellate issue as meritless.

For his second issue, he contends that the trial court improperly charged the jury. *See* Caraballo's Brief at 28-33.

As mentioned above, although he had two opportunities, Caraballo did not object to the trial court's charge before or after the trial court gave it. The Supreme Court of Pennsylvania has held that "to preserve a jury-charge challenge for appellate review, a party must . . . lodge a contemporaneous objection on the record . . . ." *Jones v. Ott*, 191 A.3d 782, 789 (Pa. 2018). Accordingly, he "waived this issue at trial by failing to object to the charge." *Commonwealth v. Gibson*, 688 A.2d 1152, 1163 n.23 (Pa. 1997).

We dismiss Caraballo's second and final appellate issue as waived.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/25/2024